The Honorable Jonathan Fitch State Senator Rural Route One, Box 31 Hindsville, Arkansas 72738-9701
Dear Senator Fitch:
I am writing in response to your request for an opinion on the disbursement of certain grant moneys from the "Economic Development of Arkansas Fund." Specifically, you indicate that the "Economic Development of Arkansas Fund Commission" awarded certain grant moneys ($400,000) to the City of Huntsville for expenses in connection with a new industrial park at which a local industry ("LaBarge Inc.") was to relocate. You note that after the grant application was made and approved by the Commission, the local industry decided to stay at its current location and purchase and expand its existing facility. A question has now arisen as to whether the previously approved grant funds can be used to reimburse the private industry for its "utility expansion and other expansion costs even though this was not part of the original grant application proposal." You pose the following question:
 Under the guidelines of the current proposal and the approval of the Economic Development Fund Commission, can LaBarge now be reimbursed for those costs of their expansion which I have indicated?
RESPONSE
It is my opinion that the answer to your question is "no." The Regulations of the Commission require awarded grant funds to be used solely and exclusively for the purpose for which the funds were awarded. Although a motion was apparently made at a Commission meeting to authorize the use of the funds toward the purpose you describe, no grant application was ever filed for such a proposal. The Regulations of the Commission require each grant award to be preceded by a completed grant application. It is axiomatic that the Commission must follow its own rules and regulations. In my opinion, therefore, proper procedure was not followed, and the funds may not be used for the alternate purposes about which you inquire.
The documents you have enclosed with your request reflect the following pertinent facts:
 1. October 17, 1999 — A grant application was submitted to the Commission by the City of Huntsville for a project entitled "Development of Industrial Park Re-location of LaBarge."
 2. December 8, 1999 — Commission grants approval of the October 17th
grant application in the amount of $400,000.
 3. December 16, 1999 — The Auditor of State draws a warrant in the amount of $400,000 payable to the "City of Huntsville Industrial Park Development Relocation of LeBarge Inc."
 4. At some point after these events, the industry in question, as you note, "decided to stay at [its] current location and purchase and expand [its] existing facility."
 5. December 11, 2000 — The General Manager of LaBarge writes a letter to the Commission requesting "that the commission consider allowing LaBarge to use the funds appropriated on December 8, 1999 for the expansion of the current LaBarge facility."
 6. April 16, 2001 — A Division Manager of LaBarge writes a letter to the Commission describing a larger than previously described expansion at its existing site and again requesting "that the Commission allow LaBarge to use the balance of the $400,000 appropriated on December 8, 1999. . . ."
 7. July 13, 2001 — The City of Huntsville submits a second grant application for a project entitled "Industrial Park Development." LaBarge is not mentioned in the second grant application.
 8. September 12, 2001 — Minutes of a Commission meeting on this date reflect the following special order of business:
 City of Huntsville — $400,000 awarded December 1999. Motion made that LaBarge should deed the utilities to the City of Huntsville with easement granted to the city by the company. LaBarge should prepare an itemized account of what was spent to put in the utilities and, after an Attorney General's opinion has confirmed the legality of reimbursement, should be reimbursed by the City of Huntsville for it's costs up to $400,000. If the expenditures were less than $400,000, then the remaining amount will be returned to the State Treasury.
In my opinion the previously awarded grant moneys may not be used for the expansion costs at the industry's existing facility. Section 14 of the "Economic Development of Arkansas Fund Commission Regulations Establishing the Procedure for Providing Financial Assistance to Further the Economic Development of Arkansas and to Extend Natural Gas to Areas of the State Not Presently Served" provides as follows:
Return of Funds to Commission
 (a) Financial assistance funds made available to an applicant by the Commission shall be utilized and expended by the applicant solely and exclusively for the payment of authorized and allowable costs and expenses of the Project for which assistance was approved. Any remaining funds shall be promptly returned to the Commission.
 (b) In the event funds furnished to an applicant by the Commission are not utilized and expended by the applicant for the specific project for which such funds were furnished within a reasonable period of time after disbursement to the applicant, or in the event the Commission determines, at any time, that the funds furnished were utilized and expended for any unauthorized purpose, the applicant shall upon demand return or otherwise pay or reimburse to the Disbursing Officer any and all such unused funds or any amount of funds used and expended for unauthorized purposes.
This portion of the Regulations prohibits use of grant funds for purposes other than for the approved project. As noted above, a motion was made at the September 12, 2001 Commission meeting to allow the use of these grant funds for the LaBarge expansion. The minutes of the Commission meeting do not indicate whether this motion was "approved," only that it was "made." In any event, in my opinion the Commission is without power to authorize the disbursement of grant funds without a completed grant application submitted for the project. Section 7 of the Commission's Regulations provides in pertinent part as follows:
 General Procedure. The general procedure to be followed in the Project financial assistance application, review and consideration process is as follows:
 (a) Application. Applicant shall initiate application review and consideration by submitting a financial assistance application to the Reviewing Agency. In all instances, applications must be in writing and must include substantive content meeting the requirements of these regulations. The following information must be submitted by the applicant with each application:
 (1) Applicant's full and correct legal name, office address, mailing address if different from office address, telephone number and fax number, if available.
 (2) If Applicant is other than a natural person, citation to law under which applicant was created. A public utility which assists an applicant in developing the application is not considered to be the applicant.
 (3) Copy of the ordinance, resolution or other applicant's authority for making application to the Commission.
 (4) Total amount of financial assistance requested, including a statement of the specific uses and purposes for which such funds are intended to be applied.
 (5) A brief but adequate description of the proposed Project for which application is made, including but not limited to the following:
(A) Project Location
(B) Anticipated total Project cost
 (C) Preliminary Project plans and specifications as may be necessary to reflect general engineering feasibility of the project.
(6) Anticipated Project timetable.
 (7) A statement reflecting the relevant history and current status of efforts toward obtaining all necessary and incidental rights and privileges needed for Project commencement, completion and operation. This requirement includes, but is not limited to, all necessary legal rights, including licenses, easements or permits, regulatory approvals, and the status of any incidental legal or governmental proceedings.
These procedures were not followed with regard to the expansion project. No application was filed concerning this particular project. Former A.C.A. § 26-59-122 (a)(2), as enacted by Act 1568 of 1999, authorizes special revenues in the "Economic Development of Arkansas Fund" to be used "for grants to support job creation or job retention projects bygovernment entities such as state agencies, public education institutions, airport or port authorities or a local body of government. . . ." (Emphasis added). No governmental entity submitted an application for the expansion project, or apparently even advocated the funding of such a project. Again, the Commission's Regulations require a completed application to initiate project review. "It has become axiomatic that an agency is bound by its own regulations." Regional Health CareFacilities, Inc. v. Rose Care, 322 Ark. 767, 912 S.W.2d 409 (1995) (quoting Panhandle Eastern Pipeline Co. v. F.E.R.C., 613 F.2d 1120 (D.C. Cir. 1979)). See also City of Benton v. Arkansas Soil and WaterCommission, 345 Ark. 249, 254-255, ___ S.W.3d ___ (2001) and Stueart v.Arkansas State Police Comm'n, 329 Ark. 46, 50-51, 945 S.W.2d 377 (1997).
The answer to your question is therefore "no." The grants funds may not be used for the purpose about which you inquire. The procedural irregularity occasioned by the lack of a proper application renders moot any substantive legal issues arising from the proposal put forth at the Commission's September 12, 2001 meeting.
Senior Assistant Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:ECW/cyh